Mr. Justice Merrick
delivered the opinion of the court.
This was a bill in equity filed for the,purpose of subjecting the estate of an insolvent decedent to the claims of the co-surety of the decedent upon the bond of a principal, which had been given to the United States for certain duties in the collection of moneys. The principal had become insolvent, other sureties had become insolvent, the defendant’s *200 intestate died, but, before his death, the liability became fixed by the co-surety paying the entire claim. He then came into this court by his bill in equity and claimed the priority of the United States by way of substitution, under the ordinary doctrine of substitution and subrogation held by courts of chancery. And the only question in the case is this: Whether, under such circumstances, a co-surety is entitled to be subrogated to the priority of the United States over the other creditors of the estate of the decedent.
The statute gives to the United States priority over all creditors to the estate of the principal debtor, and also gives to the sureties of the principal debtor this right of priority over the estate of the principal debtor where they have paid the debt. But the statute is silent as to the right of subrogation to that priority as between the estates of co-sureties.
The question to be solved here is whether, under the circumstances, one co-surety is entitled, as against the estate of a deceased co-surety, to the assertion of this priority over the other creditors for his benefit to the extent of the contributory share of the deceased surety which was paid by him to the United States.
Upon an examination of the authorities it seems to be entirely clear that the right exists. There is one case reported in 32d Grattan, 76, the case of Robinson vs. Trigg’s Administrator, where the precise question was presented, and there that very learned court, relying upon the antecedent decisions, to one of which I shall advert in a moment, used this language (p. 87):
“Whether or not the remedy provided hy the statute for the surety against his principal would have existed independent of the statute, yet the rule of substitution for enforcement of contribution as between sureties is too well established in equity jurisprudence to be set aside by implication of less force than an express statutory denial of the remedy.”
This case and the other cases are based upon the decision of Chief Justice Marshall, to be found in the opinion in *201 the case of Lidderdale vs. Robinson, reported in 2 Brockenborough, 168 — the opinion, I should say., of Chief Justice Marshall himself, because there was a difference of, opinion between him and the circuit court judge which was certified to the United States Supreme Court, and there the opinion of the Chief Justice was affirmed without hesitation. Chief Justice Marshall, in that so certified opinion, says that the right of suhi’ogation (passing now ordinary co-sureties — he was not speaking about them, hut the particular doctrine of substitution) stands, as respects the claim of the surety who pays the debt, upon the principles incontrovertibly established to every purpose in the place of the creditor.
That case went to the Supreme Court of the United States, and the decision was affirmed in the most unqualified manner. Mr. Justice Johnson, delivering the opinion of the court, comments upon the argument of hardship made on behalf of the other creditors in case the doctrine of substitution should be allowed, and he answers it most conclusively. I read from the case of Lidderdale vs. Robinson, 12 ■Wheaton, 595. He says:
“The priority, therefore, of the holder of the bill of exchange as well against the estates of the endorsers as the drawer, is unquestionable, but the other creditors insist that, as between the co-endorsers, the rights of Smith against the estate of Robinson must be determined by the nature of the action to which he would have been put at law to recover back what he paid above his moiety, that is, assumpsit on simple contract. Both on principle and authority we are induced to think otherwise. What have the creditors of Robinson to complain of? They are only referred back to the situation in which they were before they were relieved by the application of Smith’s funds to the payment of the bill of exchange. If the bill of exchange still remained in the hands of the holder unsatisfied his right to a priority from Robinson’s estate as to the moiety of the bill would be unquestionable, and if relieved from that state by the money of Smith it is but right that Smith should have refunded to him that sum *202 which they, without that payment, would certainly have been obliged to relinquish.”
So in this case. What have the creditors of Fouke’s estate to complain of? They are only remitted back to the condition in which they were before the money of Jackson, the complainant, was applied to relieving and paying the debt for which they were bound. Fouke’s estate would have been swept away by the principal creditor, the United States, the co-surety being compelled to come in and relieve that debt, they are in no worse estate than they would have been if the United States had asserted its own rights in the first instance.
After commenti ng upon the general doctrine, and referring to the.fact that the decision might have been supposed to have been based upon the law of Virginia recognizing the right of substitution, and for the purpose of excluding that idea, Justice Johnson, then, in his opinion on page 598, uses this emphatic language:
“That this, then, is the settled law of the State, in which this contract and this cause originated, cannot be doubted. But we feel no inclination to place our decision upon that restricted ground since we are well satisfied with its correctness on general principles and on authorities of great respectability in other States.”
In the course of my investigations I have discovered a decision in the State of Maryland which was not referred to in the argument, and which I quote along with the case in 110th United States, for the purpose of showing that the right of substitution applies equally well where the right of preference has originated out of prerogative, as where, it originates out of positive statute or out of contract. The doctrine is broad enough to cover all cases, and it stands upon the broad claim of absolute right, not upon contract, not upon statute, not upon prerogative, but upon the broad claim of the right in equity as between man and man; that one who has been subjected, by the action of the dominant creditor, over whose will he has no control, to an undue proportion of the burden, should be relieved by *203 being placed in the condition of the dominant creditor for the purpose of working out the equities as between himself and his co-sureties.
The case of Orem’s Executrix os Wrightson, reported in 51st Maryland, at page 34, was a case where parties had become sureties upon a tax collector’s bond, and one of them had been obliged to pay the whole. He then sued the insolvent estate of his deceased surety, and he was, by the decision of the Court of Appeals, held entitled to succeed to the priority of the State of Maryland. The court, at the bottom of page 42, after showing that in many previous cases the right of priority had been vindicated by the Court of Appeals of the State, as the prerogative right and the flower of sovereignty, says:
“In the present case, there being no liens in the way, the State was clearly entitled to be first paid out of the assets in the hands of the administrator of Leeke. The next question to be examined is, to what rights, if any, the appellees, as sureties of Leeke, are subrogated by their payment to the State of the debt due by him, at the time of Ms death, as principal debtor. The doctrines of subrogation, or substitution as it is also termed, is a peculiar feature of equity. It is not founded in contract, but has its origin in a sense of natural justice. So soon as a surety pays the debt of the principal debtor, equity subrogates him to the place of creditor, and gives him every right, lien and security to which the creditor could have resorted for the payment of his debt.”
Then he goes on and discusses all the eases, from Deering vs. Earl of Winchester, down. Then at the bottom of page 45 and on page 46, he says:
“If, therefore, the creditor could have rightfully claimed a preference in the distribution of assets, the same preference will be upheld by way of subrogation for the benefit of the surety. Is a different rule to be applied where the State is a creditor?”
That is tó say where the right of priority flows out of perogative or out of a statute. He continues:
*204 “We can see no reason why it should, be. It is not necessary to inquire how or in what manner the State’s right to rank as a preferred creditor is derived, whether it is a prerogative right derived from the common law, or whether it has been conferred by statute. As it is said in some of the cases to which we have referred, equity, in applying the doctrine of subrogation, looks not to form but to the substance and essence of the transaction. It looks to the debt which is to be paid, add not to the hand which may happen to hold it, and will see that the fund charged with its payment shall be so applied.”
The Supreme Court of the United States, in 110 U. S., in the case of the United States against Eyder, where the claim was made of the subrogation of the bail in a criminal case to the right of priority, deny the right of subrogation of the bail on account of public policy. But while they deny that, they revie w the doctrine of subrogation at common law and especially refer to the recognized doctrine of subrogation to the right of prerogative of the Crown of England. So it has been applied from the time of Magna Oharta in iav or of sureties and also in favor of one surety against his co-suretj, so as to vindicate the justice of the particular case in all instances irrespective of the sources from which the right to priority has flowed to the principal creditor.
I read a passage from page 733 of' the opinion of the Court delivered by Mr. Justice Bradley. After discussing the case of Dering vs. The Earl of Winchester, to be found in' 1st White & Tudor’s Leading Cases in Equity, 100, he goes on to say :
“ The doctrine is that a surety paying the debt for which he is bound is not only entitled to all the rights and remedies of the creditor against the principal for the whole amount, but against the other sureties for their proportional part. This is clearly the rule where the principal obligation is the payment of money or the performance of a civil duty. And in England the sureties of a debtor to the king (as for duties, taxes, excises, etc.,) have always, since magna *205 charta, at least, had the right, upon paying the debt, to have the benefit of prerogative process, such as extent or other crown process adapted to the case, to aid them in coercing payment from the principal and compelling contributions from co-sureties.”
So that it is quite apparent that the doctrine of prerogative out of which the doctrine of priority arises, is no qualification of the right of a co-surety to be placed in the exact position with all the rights and exclusiveness of the principal creditor as against the party for whom he has paid his money.
One other remark. It was suggested that if such a doctrine were allowed, it would tend to impede the facility, and diminish fhe chances, of obtaining sureties on official bonds. The Court of Appeals of Maryland, in this case to which I have referred, mention that subject too, and takes just the opposite view, as I shall, of that matter. At the close of the opinion to which I have referred, they say, a't the bottom of page 46:
“ While this view of the law will do no wrong to any one, it will add facilities in securing and collecting the revenue of the State. If sureties know that they can be subrogated to the priority of the State, less apprehension will be felt in joining in the bonds of collectors, and less delay in payment of solvent securities, other creditors are not injured, for if the State has the first claim upon the funds, it does them no wrong whether this claim is enforced by the State or by those standing in its stead.”
This brief review of these authorities and a multitude of others to which I could have referred, show that every objection which has been urged is without foundation in the present case, and the party complainant is entitled to the right which he claims at the hands of a court of equity to be substituted, and to be paid the contributory share of his co-security out of the assets of the decedent, to the exclusion of all his other creditors, and it will be so ordered.